UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

HAYLEY BAILEY, a minor,
KARI BAILEY, an individual;
EDDIE BAILEY, an individual,

                            NO. CIV. S-08-543 LKK/KJM

        Plaintiffs,

    v.

COUNTY OF SAN JOAQUIN, SAN
JOAQUIN COUNTY SHERIFF'S
DEPARTMENT; SHERIFF STEVE
MOORE, DEPUTY SHERIFF TERRY             O R D E R
BREITMAIER; and DOES 1-50,
inclusive,

        Defendants.

_____/

     This case concerns a police officer's actions in approaching plaintiffs' house and firing his gun at plaintiffs' dog while it exited plaintiffs' front door. After striking the dog's paw, the bullet ricocheted and fragmented. Plaintiffs suffered injuries from being struck by the bullet fragments. Plaintiffs bring eight causes of action against three defendants. Defendants have moved for summary judgment on all claims. For the reasons stated below,

1

1  defendants' motion is granted in part.

2  **I. BACKGROUND**

3  Defendants County of San Joaquin ("County"), Sheriff Steve

4  Moore ("Moore"), and Deputy Sheriff Terry Breitmaier

5  ("Breitmaier") moved for summary judgment.

6  Defendant Breitmaier was assigned to the County's code

7  enforcement team ("SAFE team") for deployment on May 1, 2007.[1]

8  Breitmaier had previously served in the SAFE team two or three

9  times. Sergeant William Mitchell ("Mitchell") was assigned to

10 supervise the SAFE team unit. A citizen had complained about a

11 trailer home, possible transients and possible drug use.  The

12 complaint was directed at 2624 Munford Avenue, but for some

13 unknown reason, the SAFE team was directed to plaintiffs'

14 residence, 2706 Munford Avenue.  The County did not confirm the

15 address with the agency nor did it conduct a visual inspection

16 of the property prior to deployment of the team.

17 When the SAFE team arrived at 2706 Mumford Avenue,

18 Plaintiffs Kari Bailey ("Kari") and Hayley Bailey ("Hayley")

19 were in their home with some friends. Plaintiff Eddie Bailey

20 ("Eddie") was not present. At the time of the incident, Hayley

21 was five years old. Kari and Eddie are her parents. Prior to

---

23 [1] When considering a motion for summary judgment, the court views
24 the evidence in the light most favorable for the non-moving party.
   Here, many factual issues are in dispute. Rather than identify each
   factual dispute in this section, the court will address each
25 dispute, as relevant, in the analysis section below. The facts
   presented in this section reflect the court's understanding of the
26 facts viewed in the light most favorable to the plaintiffs.

1   their arrival at plaintiffs' home, the SAFE team was informed of

2   an arrest warrant for Eddie. The basis of the warrant was

3   Eddie's failure to comply with a community service punishment

4   for a misdemeanor traffic violation. Breitmaier was not informed

5   of the nature of Eddie's arrest warrant.

6       Immediately upon their arrival at plaintiffs' home, a

7   deputy saw someone exit the back door. The person was

8   plaintiffs' friend, Ona Rutledge, who was taking out the trash.

9   Despite the fact that this was only a code enforcement

10  violation, the defendants claim that they were concerned that

11  someone would escape from the back yard.  Accordingly, Mitchell

12  and the deputy went to the back yard.  Mitchell instructed

13  Breitmaier to watch the front of the residence.

14      Breitmaier approached plaintiffs' front door alone. He

15  walked through plaintiffs' front yard in which were numerous

16  children's toys. After hearing a noise, Breitmaier withdrew his

17  gun. Approaching the front door in this manner violated police

18  tactical guidelines.

19      During this time, Rutledge informed Kari that police were

20  at her house. Consequently, Kari went to the front door. Hayley

21  and their dog, Daisy, accompanied Kari to the door. Hayley stood

22  immediately to Kari's left at the front door. When Kari opened

23  the front door, she attempted to keep Daisy inside the house.

24  However, the dog started to exit the house. At that time,

25  Breitmaier was two or three feet from the door.

26      Startled by the dog, Breitmaier fired his gun, and hit the

3

dog's paw. The dog was in the doorway when the gun was fired, and Kari and Hayley were a few feet behind her, in the threshold of the door. Breitmaier saw Kari and Hayley when he fired his gun in their direction. Kari and Hayley did not pose any threat to Breitmaier. The bullet hit the porch, ricocheted, and fragmented. A fragment grazed Kari's right leg, another grazed Hayley's chest. A final fragment entered Hayley's right thigh; this fragment cannot be removed for medical reasons.

By shooting in the direction of any open doorway, Breitmaier violated his police training. In particular, Breitmaier was trained to be aware of his surroundings before he fires his gun. Additionally, Breitmaier should have been aware that bullets are highly unpredictable. Firing his weapon when two non-threatening individuals are in the range of fire constituted clear violations of police policies.

Immediately after Kari and Hayley were struck by the bullet fragments, Hayley began screaming that she was dying. Kari was aware that Hayley was shot. Breitmaier went to his car to obtain his first aid kit. Breitmaier or other officers took Daisy to the veterinarian without Kari's knowledge.

Eventually, Kari and Hayley were transported to the hospital. Eddie joined them at the hospital, and was promptly arrested by police officers for the outstanding warrant. He was booked and subsequently released. Eddie took about two days off from work following this incident to care for Kari and Hayley. Both Kari and Hayley have faced, and continue to face

1  difficulties coping with the shooting.

2      Additionally, the County refused to pay for Daisy's

3  veterinary care. The veterinarian would not release the dog

4  without payment. As a result, plaintiffs were forced to take out

5  a loan in order to retrieve their dog. The dog was with the

6  veterinarian for three or four days. Plaintiffs had to pay

7  boarding fees for each day.

8      Breitmaier did not receive any discipline or training as a

9  result of this incident.

10 **II. STANDARD OF REVIEW FOR FED. R. CIV. P. 56 MOTION FOR SUMMARY JUDGMENT**

11     Summary judgment is appropriate when there exists no

12 genuine issue as to any material fact. Such circumstances

13 entitle the moving party to judgment as a matter of law. Fed. R.

14 Civ. P. 56(c); see also Adickes v. S.H. Kress & Co., 398 U.S.

15 144, 157 (1970); Secor Ltd. v. Cetus Corp., 51 F.3d 848, 853

16 (9th Cir. 1995). Under summary judgment practice, the moving

17 party

18         always bears the initial responsibility of
           informing the district court of the basis
19         for its motion, and identifying those
           portions of "the pleadings, depositions,
20         answers to interrogatories, and admissions
           on file, together with the affidavits, if
21         any," which it believes demonstrate the
           absence of a genuine issue of material fact.

22

23 Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Fed.

24 R. Civ. P. 56(c)).

25     If the moving party meets its initial responsibility, the

26 burden then shifts to the opposing party to establish the

5

existence of a genuine issue of material fact. <u>Matsushita Elec.</u>
<u>Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 585-86 (1986);
<u>see also</u> <u>First Nat'l Bank of Ariz. v. Cities Serv. Co.</u>, 391 U.S.
253, 288-89 (1968); <u>Secor Ltd.</u>, 51 F.3d at 853. In doing so, the
opposing party may not rely upon the denials of its pleadings,
but must tender evidence of specific facts in the form of
affidavits and/or other admissible materials in support of its
contention that the dispute exists. Fed. R. Civ. P. 56(e); <u>see</u>
<u>also</u> <u>First Nat'l Bank</u>, 391 U.S. at 289. In evaluating the
evidence, the court draws all reasonable inferences from the
facts before it in favor of the opposing party. <u>Matsushita</u>, 475
U.S. at 587-88 (citing <u>United States v. Diebold, Inc.</u>, 369 U.S.
654, 655 (1962) (<u>per</u> <u>curiam</u>)); <u>County of Tuolumme v. Sonora</u>
<u>Cmty. Hosp.</u>, 236 F.3d 1148, 1154 (9th Cir. 2001). Nevertheless,
it is the opposing party's obligation to produce a factual
predicate as a basis for such inferences. <u>See</u> <u>Richards v.</u>
<u>Nielsen Freight Lines</u>, 810 F.2d 898, 902 (9th Cir. 1987). The
opposing party "must do more than simply show that there is some
metaphysical doubt as to the material facts . . . . Where the
record taken as a whole could not lead a rational trier of fact
to find for the nonmoving party, there is no 'genuine issue for
trial.'"  <u>Matsushita</u>, 475 U.S. at 586-87 (citations omitted).

1           **III. ANALYSIS[2]**

2     **A.    Claims Against Breitmaier**

3           **1.    Section 1983**

4                 **a.    Fourth Amendment Excessive Force Claim**

5           To determine whether Breitmaier is entitled to summary

6     judgment on Kari's and Hayley's claims of excessive force in

7     violation of the Fourth Amendment, the court must first, decide

8     whether a reasonable jury could find that Kari and Hayley were

9     seized, and second, decide whether that jury could find that the

10    manner in which Breitmaier seized them was unreasonable. See

11    Hopkins v. Bonvicino, 573 F.3d 752, 776 (9th Cir. 2009)

12    (Violation of the Fourth Amendment for excessive force only

13    occurs when an officer used such force "in effecting a

14    seizure."). With respect to the first step, defendant argues

15    that no facts support that plaintiffs Kari and Hayley were

16    seized by him. Defendant refers to County of Sacramento v.

17    Lewis, 523 U.S. 833 (1998), in support of his argument that no

18    seizure occurred. Lewis supports the proposition that a seizure

19    only occurs "when there is a governmental termination of freedom

20    of movement through means intentionally applied." Id. at 844.

21    Defendant misinterprets Lewis to require the officer to intend

22    to terminate plaintiffs' movement through intentional means.

23    _____

24    [2] Plaintiffs do not oppose defendants' motions for summary judgment
      as to a Section 1983 claim under the Eighth Amendment, and to their
25    Section 1985 and 1986 claims because no facts support these claims.
      Accordingly, the court grants summary judgment for defendants on
26    these causes of action.

1  Lewis only requires that an officer's action be intentional, and
2  not accidental. Lewis is thus distinguishable from the case at
3  bar. Specifically, Lewis considers the accidental actions of an
4  officer in a high speed automobile chase that resulted in the
5  death of the individual pursued. Id. Lewis turns on the
6  accidental actions of an officer in driving his vehicle, not as
7  here, in defendant's intentional actions in approaching
8  plaintiff's home and firing his gun. While defendant may not
9  have intended that his bullet fragment and strike plaintiffs, it
10 appears plain that he did intend to approach the front door of
11 plaintiffs' house with his gun drawn, and to fire his weapon.

12      The correct test for a seizure is that, "only if, in view
13 of all the circumstances surrounding the incident, a reasonable
14 person would have believed that he was not free to leave" is the
15 person seized. California v. Hodari D., 499 U.S. 621, 628
16 (1991), quoting U.S. v. Mendenhall, 446 U.S. 544, 554 (1980).
17 The test for a seizure is objective, "whether the officer's
18 words and actions would have conveyed [that the person was being
19 ordered to restrict his movement] to a reasonable person." Id.
20 Here, considering the facts in the light most favorable to
21 plaintiffs, Kari and Hayley were aware that police officers were
22 surrounding their home and saw Officer Breitmaier at the front
23 door with his gun drawn. A reasonable jury could decide based on
24 these facts that Kari and Hayley were seized, and therefore
25 Fourth Amendment protections apply.

26      Because a reasonable jury could determine that Kari and

1  Hayley were seized, the court must now consider whether a

2  reasonable jury could conclude the Breitmaier used excessive

3  force. In determining whether a seizure is reasonable, "courts

4  consider the totality of the circumstances, . . . and 'balance

5  the nature and quality of the intrusion on the individual's

6  Fourth Amendment interests against the importance of the

7  governmental interests alleged to justify the intrusion.'" U.S.

8  v. Guzman-Padilla, 573 F.3d 865, 876-77 (9th Cir. 2009) quoting

9  Scott v. Harris, 550 U.S. 372, 383 (2007) and citing Graham v.

10 Connor, 490 U.S. 386, 394-95 (1989) and Samson v. Ca., 547 U.S.

11 843, 848 (2006). Here, plaintiffs have presented evidence that

12 (1) Breitmaier violated police procedure in approaching their

13 home; (2) plaintiffs' dog did not act aggressively towards

14 Breitmaier; (3) Breitmaier saw Kari and Hayley when he fired his

15 gun at the dog; (4) Breitmaier had reason to believe a child was

16 in the house; and (5) that Breitmaier fired his gun under

17 circumstances in which he could not predict where the bullet

18 would likely travel or if fragmented, who might be injured.

19 Based on this evidence, a reasonable jury could find that

20 Breitmaier's actions were unreasonable, and thereby violated

21 plaintiff's Fourth Amendment rights. Thus, defendant's motion

22 for summary judgment as to plaintiff's excessive force claim is

23 denied.

24           **b.     Unreasonable Search**

25       Defendant does not move for summary judgment on plaintiffs'

26 claim for a violation of the Fourth Amendment with respect to

the search of the curtilage of plaintiffs' home. However, plaintiffs nonetheless argue in opposition that they have stated a claim for an unreasonable search. In his reply, defendant argues that plaintiffs did not plead a cause of action for an unreasonable search in their complaint. Upon review of plaintiffs' complaint, it appears that plaintiffs have only pled a cause of action under the Fourth Amendment for excessive force. However, because this issue was not raised in defendant's motion, the court will not address it at this time. The court notes that pursuant to its June 3, 2008 order, Doc. No. 12, "No further . . . amendments to pleadings is permitted except with leave of court, good cause having been shown."

### c.   Due Process

Defendant also argues that plaintiffs' have not presented evidence sufficient to support a claim for the violation of their due process rights, yet fails to identify any specific facts or theories to support this argument. Plaintiffs, however, argue that they have presented evidence sufficient to support a claim for violation of their substantive due process rights. Specifically, plaintiffs argue that under <u>Lewis</u>, Breitmaier's actions were deliberately indifferent and shock the conscience. 523 U.S. at 845-46. Here, plaintiffs have provided evidence that Breitmaier saw children's toys as he crossed plaintiffs' front yard, and saw a young child and her mother in the doorway and within the range of fire when he fired his gun. A reasonable jury could decide from this evidence that Breitmaier was

1  deliberately indifferent to human life and that his actions

2  shock the conscience. Thus, defendant's motion for summary

3  judgment on plaintiffs' due process claim is denied.

### d.   Qualified Immunity

5  Based on the discussion of clearly established law above,

6  and viewing the facts in the light most favorable to plaintiffs,

7  no reasonable officer in Breitmaier's position could believe

8  that his actions were constitutional. See, e.g., Boyd v. Benton

9  County, 374 F.3d 773, 779 (9th Cir. 2004) (Officers used

10 excessive force when they discharged weapon "blind" into a room

11 occupied by innocent bystanders without considering alternatives

12 or measures to reduce the risk of injury.); Lewis, 523 U.S. at

13 945-55 (describing the Supreme Court's due process analysis).

### 2.   State Law Claims

### a.   Assault and Battery

16 Breitmaier moves for summary judgment on plaintiffs' claims

17 for assault and battery. However, defendant only argues that

18 plaintiffs cannot meet the elements of battery. Similarly

19 plaintiffs only address battery in their opposition. For this

20 reason, the court construes defendant's motion as only moving

21 for summary judgment as to battery, and not as to assault.

22 Under California law, the elements of battery are: "(1)

23 defendant intentionally performed an act that resulted in a

24 harmful or offensive contact with the plaintiff's person; (2)

25 plaintiff did not consent to the contact; and (3) the harmful or

26 offensive contact caused injury, damage, loss or harm to

1  plaintiff." <u>Brown v. Ransweiler</u>, 171 Cal. App. 4th 516, 526-27

2  (Cal. Ct. App. 2009) (internal citations omitted). When a state

3  law battery claim is brought against a police officer, "a

4  plaintiff must prove that the peace officer's use of force was

5  unreasonable. . . . The question is whether a peace officer's

6  actions were objectively reasonable based on the facts and

7  circumstances confronting the peace officer." <u>Id.</u> at 527.

8       Defendant argues that plaintiffs cannot show that

9  Breitmaier possessed the requisite intent to harm Kari and

10 Hayley. However, Breitmaier admits that he intentionally fired

11 his gun to harm plaintiffs' dog. Under the doctrine of

12 transferred intent, a defendant "who unlawfully aims at one . .

13 .  and hits another . . . is guilty of assault and battery on

14 the party he hit, the injury being the direct, natural and

15 probable consequence of the wrongful act." <u>Singer v. Marx</u>, 144

16 Cal. App. 2d 637, 643 (1956).[3] Consequently, Breitmaier's intent

17 to harm the dog transferred to all those who were hit,

18 specifically Kari and Hayley.

19      To bring a claim of battery against a law enforcement

20 officer, a plaintiff must also demonstrate that the officer's

21 actions were unreasonable. As discussed in the excessive force

22 claim above, a reasonable jury could find that Breitmaier acted

23

24 [3] Defendants argue in their reply brief that <u>Singer</u> does not apply
   because the theory of transferred intent requires the intended
25 party to be a person. Defendants provide no support for this
   theory, nor can the court find any, and the court sees no reason
26 to limit transferred intent doctrine in a situation where an
   individual shoots at a dog and two human bystanders are injured.

1  unreasonably. Thus, defendant's motion for summary judgment on

2  plaintiff's battery claim is denied.

3                    **b.   Negligence**

4      Breitmaier argues that no evidence exists to support

5  plaintiffs' claim that he owed Kari and Hayley a duty, and

6  alternatively that Breitmaier did not breach any duty because he

7  acted reasonably. In order to prove a defendant acted

8  negligently, a plaintiff must show "duty, breach of duty,

9  causation, and damages." <u>Carrera v. Maurice J. Sopp & Son</u>, 177

10 Cal. App. 4th 366, 377 (Cal. Ct. App. 2009). The court decides

11 whether a duty exists. When deciding whether a duty exists,

12 courts consider the following factors:

13          [(1)] the foreseeability of harm to the
            plaintiff, [(2)]the degree of certainty that
14          the plaintiff suffered injury, [(3)]the
            closeness of the connection between the
15          defendant's conduct and the injury suffered,
            [(4)] the moral blame attached to the
16          defendant's conduct, [(5)] the policy of
            preventing future harm, [(6)] the extent of
17          the burden to the defendant and consequences
            to the community of imposing a duty to
18          exercise care with resulting liability for
            breach, and [(7)] the availability, cost,
19          and prevalence of insurance for the risk
            involved.

20

21     <u>Id.</u> at 378, <u>quoting</u> <u>Rowland v. Christian</u>, 69 Cal. 2d 108,

22 113 (1968). When determining foreseeability with respect to

23 duty, the court does not "decide whether a *particular*

24 plaintiff's injury was reasonably foreseeable in light of a

25 *particular* defendant's conduct, but rather . . . evaluate[s]

26 more generally whether the category of negligent conduct at

issue is sufficiently likely to result in the kind of harm experienced that liability may appropriately be imposed on the negligent party." Id., quoting Ballard v. Uribe, 4 Cal. 3d 564, 572-73 (1986). Here, plaintiffs have presented evidence from which a jury could conclude facts from which the court would decide Breitmaier owed Kari and Hayley a duty of care. Specifically, when Breitmaier fired a weapon towards the open doorway of a house, aware at least that a person likely opened the door and at most actually seeing a young child and her mother, he owed them a duty to only fire his gun with due care and generally to follow procedures drafted in part to protect individuals like Kari and Hayley. Plaintiffs have provided evidence that under the circumstances it is foreseeable that a bullet may fragment and may harm individuals outside of the direct line of fire. See, e.g., Decl. of Chapman, 51:4-6. Furthermore, the balance of the remaining factors also indicate that defendant owed plaintiffs a duty: there is no question that Kari and Hayley suffered an injury because of Breitmaier's actions; the firing of the gun and the resulting bullet injuries are closely related; the careless use of a weapon by a police officer is an activity warranting moral blame; strong policy concerns weigh in favor of preventing officers from taking similar actions in the future; and the burden is relatively low for those in the defendant's position and imperceptible to the community. Consequently, plaintiffs have provided sufficient evidence, which if believed by the jury, the court would decide

that defendant owed them a duty of due care when discharging a weapon and approaching a house.

Defendant argues in the alternative that even if he has a duty, he did not breach such a duty. However, as demonstrated above, plaintiffs have provided sufficient evidence for a reasonable jury to conclude that Breitmaier did not act reasonably in his approach to the Bailey home and subsequent firing of his weapon.

Breitmaier further argues that plaintiffs cannot establish proximate cause between his breach and their injuries. The jury must decide whether plaintiffs' specific injuries were foreseeable consequences from defendant's actions. <u>Goebel v. City of Santa Barbara</u>, 92 Cal. App. 4th 549, 557 (Cal. Ct. App. 2001). Here, where plaintiffs have presented evidence that Breitmaier saw a young child and her mother before he fired his weapon, it is foreseeable that plaintiffs would be injured by Breitmaier's negligent actions. Thus, a reasonable jury could find that plaintiffs' injuries were foreseeable consequences of defendant's actions, and defendant's motion for summary judgment is denied.

### i.   Whether Eddie Bailey Can Join Plaintiffs' Action for Negligence

Defendants argue that Eddie lacks standing to bring any claims against them because he was not present at the time of the incident, and thus did not suffer any injuries. In their opposition, plaintiffs only argue that Eddie brings claims under

1  negligence and conversion. For this reason, defendants motion

2  for summary judgment as to all other claims is granted with

3  respect to Eddie.

4      Plaintiffs cite to <u>Bradford v. Edmands</u>, 215 Cal. App. 2d

5  159 (1963) in support of their claim that Eddie suffered damages

6  because of defendants' negligence. Specifically, plaintiffs

7  argue that Eddie has provided evidence that he had to take time

8  off from work to care for his wife and daughter after the

9  incident. <u>Bradford</u> does not support plaintiffs' position.  In

10 <u>Bradford</u>, a mother was entitled to damages for medical care she

11 provided to her son who was injured by defendant's negligence.

12 <u>Id.</u> at 168. However, the court in <u>Bradford</u> distinguished between

13 two types of care the mother offered: because the mother was a

14 trained nurse, she was allowed to recover for the special

15 nursing care and attendance she provided for her son, but could

16 not recover for the care and attendance that she provided as a

17 parent, under her duty to furnish to a minor child. <u>Id.</u>; <u>see</u>

18 <u>also</u> <u>Laughner v. Bryne</u>, 18 Cal. App. 4th 904, 910 (Cal. Ct. App.

19 1993). Nonetheless, the facts in <u>Bradford</u> are somewhat

20 distinguishable in that the mother was not seeking recovery for

21 loss of income, but rather only reimbursement for her services

22 to her son. The question remains, therefore, as to whether Eddie

23 can sustain a claim of negligence against defendants for loss of

24 income resulting from their negligence. Under these facts and

25 the standard discussed above, Breitmaier, Moore, and the County

26 did not owe Eddie a duty of care, largely because it was not

1  foreseeable that those in Eddie's position would be harmed by

2  defendants' conduct. Thus, defendants are entitled to summary

3  judgment on Eddie's claim for negligence.[4]

4              **c.   Negligent Infliction of Emotional Distress**

5       Defendant moves for summary judgment on plaintiffs'

6  negligent infliction of emotional distress claim arguing that

7  Kari and Hayley were not aware of each other's injuries at the

8  time those injuries were inflicted. To prove a claim for

9  negligent infliction of emotional distress for injuries

10 inflicted upon a third person, a plaintiff must satisfy a three

11 part test: plaintiff "(1) is closely related to the injury

12 victim; (2) is present at the scene of the injury-producing

13 event at the time it occurs and is then aware that it is causing

14 injury to the victim; and (3) as a result suffers serious

15 emotional distress-a reaction beyond that which would be

16 anticipated in a disinterested witness and which is not an

17 abnormal response to the circumstances." <u>Bird v. Saenz</u>, 28 Cal.

18 4th 910, 915 (2002) (internal quotation omitted). The only

19 requirement at issue here is the second. In <u>Bird</u>, the California

20 Supreme Court explained that the "requirement that the plaintiff

21 be contemporaneously aware of the injury-producing event [does

22 not require] visual perception of an impact on the victim[, but

23 rather may be] perceived by other senses so long as the event is

24 _____

25 [4] The court notes that Eddie's care of Kari and Hayley may be
   relevant to the calculation of damages for Kari and Hayley. <u>See</u>
   <u>Seedborg v. Lakewood Gardens Civic Ass'n</u>, 105 Cal. App. 2d 449, 454

26 (Cal. Ct. App. 1951).

1    contemporaneously understood as causing injury to a close

2    relative." Id. at 917.

3         Here, plaintiffs have provided evidence that Kari and

4    Hayley saw Breitmaier fire his gun in their direction, saw

5    Breitmaier shoot their dog, and immediately perceived that they

6    were struck by the bullet. However, plaintiffs have only

7    provided evidence that Kari perceived that Hayley was

8    simultaneously struck by the bullet. This evidence includes both

9    Hayley's statements concerning being shot and Kari's statements

10   that her daughter had been shot. There is no evidence to support

11   that Hayley also perceived that her mother was hit by a fragment

12   of the bullet. For these reasons, defendant's motion for summary

13   judgment is granted as to Hayley's claim for negligent

14   infliction of emotional distress, and denied as to Kari's claim.

15                    **d.    Intentional Infliction of Emotional Distress**

16        Breitmaier also seeks summary judgment on plaintiffs'

17   intentional infliction of emotional distress claim. To succeed

18   on this claim, plaintiff must prove all three elements of the

19   tort: "(1) extreme and outrageous conduct by the defendant with

20   the intention of causing, or reckless disregard of the

21   probability of causing, emotional distress; (2) the plaintiff's

22   suffering severe or extreme emotional distress; and (3) actual

23   and proximate causation of the emotional distress by the

24   defendant's outrageous conduct." Christensen v. Superior Court,

25   54 Cal. 3d 868, 903 (1991) (internal quotation omitted). To

26   prove that defendant's conduct is "outrageous[, it] must be so

1  extreme as to exceed all bounds of that usually tolerated in a

2  civilized community." Id. Defendant only argues that plaintiffs

3  cannot meet the first element of the claim.

4      Here, the facts in a light most favorable to plaintiffs are

5  as follows: Breitmaier walked through plaintiffs' front yard in

6  which he saw numerous children's toys. Breitmaier then

7  approached plaintiffs' front door in violation of his direct

8  orders and police procedure with his gun drawn. A five year old

9  girl, Hayley, and her mother, Kari, approached the front door

10  with their dog. Kari opened the door, while trying to prevent

11  her dog from entering the yard. The dog escaped and headed

12  toward the yard. Breitmaier saw both plaintiffs a couple feet

13  behind the dog. Nonetheless, Breitmaier shot his gun at the dog.

14  The bullet fragmented and ricocheted, and struck both Kari and

15  Hayley.

16      Based on these facts, a reasonable jury could conclude that

17  Breitmaier's conduct was extreme and outrageous in that he acted

18  in "reckless disregard of the probability of causing

19  [plaintiffs] emotional distress." Firing a gun in the direction

20  of a small child and her unarmed mother could constitute

21  behavior that exceeds all bounds usually tolerated in a

22  civilized community. For these reasons, defendant's motion for

23  summary judgment on plaintiffs' intentional infliction of

24  emotional distress claim is denied.

25

26

1                    **e.    Conversion**

2          Plaintiffs bring a claim of conversion against defendant

3    for shooting plaintiffs' dog, taking the injured dog to a

4    veterinarian without plaintiffs' consent, and refusing to pay

5    the bill for the veterinary care, which resulted in the

6    veterinarian refusing to return plaintiffs's dog for several

7    days while plaintiffs obtained a loan for said purpose.

8    Defendant argues that Breitmaier cannot be liable for conversion

9    because (1) Breitmaier lacked the intent to exercise ownership

10   over plaintiffs' property and (2) Kari ratified the dog's

11   veterinary treatment. Defendant also argues that Eddie lacks

12   standing to bring this claim.

13         To prove conversion, a plaintiff must show: "(1) the

14   plaintiff's ownership or right to possession of the property;

15   (2) the defendant's conversion by a wrongful act or disposition

16   of property rights; and (3) damages." <u>Burlesci v. Petersen</u>, 68

17   Cal. App. 4th 1062, 1066 (Cal. Ct. App. 1998)(<u>citing</u> <u>Moore v.</u>

18   <u>Regents of University of California</u> 51 Cal. 3d 120 (1990); other

19   citation omitted.), <u>see also</u> <u>Bank of New York v. Fremont General</u>

20   <u>Corp.</u>, 523 F.3d 902, 914 (9th Cir. 2008) (same). Contrary to

21   defendant's position, "[c]onversion is a strict liability tort

22   [whereby, t]he foundation of the action rests neither in the

23   knowledge nor the intent of the defendant." <u>Burlesci</u>, 68 Cal.

24   App. 4th at 1066. Specifically, a defendant can be liable for

25   conversion even where he acted in good faith, lacked knowledge

26   of the conversion, or lacked motive to commit the tort. <u>Id.</u>  The

1  case upon which defendant relies to support his contention that

2  he cannot be liable for conversion because he did not intend to

3  assert ownership over the dog is distinguishable. In <u>Collin v.</u>

4  <u>American Empire Ins. Co.</u>, 21 Cal. App. 4th 787, 812 (Cal. Ct.

5  App. 1994), the court held that conversion cannot occur

6  accidentally. Rather, the court held, that conversion must be

7  based on deliberate conduct. <u>Id.</u> at 814. Defendant's conduct in

8  taking the dog from its owners and bringing it to the

9  veterinarian is clearly deliberate, and therefore can support a

10 claim of conversion. Thus, defendant's first argument for

11 summary judgment on this claim is rejected.

12     Defendant's second argument is that plaintiffs ratified the

13 conversion of their dog. In <u>Bank of New York</u>, the Ninth Circuit

14 considered a case where account supervisors at plaintiff bank

15 approved the transfer of payments by defendant even though the

16 transfer required written approval from a government official,

17 which it did not have. <u>Bank of New York</u>, 523 F.3d at 915. The

18 court held that the plaintiff ratified the defendant's

19 conversion of the funds because by approving the transactions

20 it, "consent[ed] to the defendant's exercise of dominion." <u>Id.</u>

21 Here, defendant seeks to make a similar argument that by

22 allowing the officers to take the dog to the veterinarian, Kari

23 ratified the conversion. While a reasonable interpretation of

24 the facts, plaintiffs have demonstrated that a reasonable jury

25 could also find that Kari did not ratify the conversion.

26 Specifically, a jury could find that Breitmaier took the dog to

1   the veterinarian without Kari's knowledge. Consequently, the

2   jury could conclude that Kari in no way approved the actions of

3   the defendant in taking possession of her property. The

4   reasonable jury could conclude that Kari did not consent to

5   Breitmaier's conversion of her dog.

6        Lastly, defendants present no support for their claim that

7   an individual must be present at the time conversion is

8   committed. Furthermore, the elements of conversion do not

9   require presence. For this reason, Eddie has presented evidence

10  sufficient to support his claim of conversion. Thus, defendant's

11  motion for summary judgment as to plaintiffs' claim for

12  conversion is denied.

13              **f.   Violation of California Civil Code Section
                       52.1**
14

15       Defendant argues that no evidence exists to support

16  plaintiffs' claim for violation of Cal. Civ. Code § 52.1. This

17  section provides that "[a]ny individual whose exercise or

18  enjoyment of rights secured by the Constitution or laws of the

19  United States, or of rights secured by the Constitution or laws

20  of this state, has been interfered with, or attempted to be

21  interfered with [by threats, intimidation, or coercion], may

22  institute and prosecute . . . a civil action for damages." Cal.

23  Civ. Code. § 52.1(a-b). While initially considered to only apply

24  to crimes motivated by discriminatory animus or intent, the

25  California Supreme Court has subsequently broadened its coverage

26  to include any unconstitutional acts or acts contrary to

22

statutory law "so long as those acts were accompanied by the requisite threats, intimidation, or coercion." Venegas v. County of Los Angeles, 32 Cal. 4th 820, 843 (2004). Specifically, in Venegas, the California Supreme Court permitted a Section 52.1 claim to accompany a Section 1983 claim for an unreasonable detention, search, and seizure. Id. at 827. Subsequently, California courts have held that Section 52.1 claims are viable when plaintiff has a claim for excessive force by a law enforcement officer. See, e.g., Thompson v. County of Los Angeles, 142 Cal. App. 4th 154, 172-73 (Cal. Ct. App. 2006); City of Simi Valley v. Superior Court, 111 Cal. App. 4th 1077, 1082-84 (Cal. Ct. App. 2003).

Consequently, the only colorable argument raised by defendant concerning this claim is whether Breitmaier's actions, considered in the light most favorable to plaintiff, constitute "threats, intimidation, or coercion." As discussed above, plaintiffs have stated a claim that their Fourth Amendment and Due Process rights were violated by defendant. There is no evidence that defendant threatened or coerced plaintiffs. There is, however, a question of fact as to whether defendant intimidated plaintiffs. Specifically, plaintiffs have provided evidence that defendant's actions in approaching plaintiffs' front door with his gun drawn and his eventual shooting of plaintiffs' dog while Kari and Hayley were in the line of fire and only a couple feet from the dog could constitute intimidating behavior affecting the exercise of plaintiffs'

1  constitutional rights. Thus, defendants motion for summary

2  judgment as to plaintiff's Section 52.1 claim is denied.

3      **B.**   **Claims Against County of San Joaquin and Moore**

4         **1.**   **Section 1983**

5            **a.**   **County of San Joaquin**

6      The County of San Joaquin ("County") argues that plaintiffs

7  have not provided evidence to support their claim that their

8  injuries were caused by an official government policy or custom

9  under Monell v. Dep't of Social Servs., 436 U.S. 658 (1978).

10 Defendant only presents evidence that its written policies

11 concerning the use of force fail to give rise to a Monell claim.

12 Plaintiffs, however, present two unwritten policies to support

13 their claim against the County. Specifically, plaintiffs argue

14 that the County has "(1) a policy and practice of solely relying

15 on other agencies to provide accurate addresses without having a

16 system in place to verify the address accuracy; and . . . (2) a

17 policy and practice of not conducting a visual inspection of the

18 property prior to deploying . . . the Community Resource Team."

19 Plaintiffs' Opposition at 27. Plaintiffs contend that but for

20 these policies, Breitmaier would never have approached their

21 front door and fired his gun in the direction of their home,

22 which ultimately caused plaintiffs' injuries. Plaintiffs fail to

23 provide any citations to the record to support the existence of

24 these policies. It appears to the court that plaintiffs seek to

25 include testimony of Steve Moore and William Mitchell to support

26 their claim of a department-wide policy or procedure.

Specifically, in plaintiffs' statement of additional material
facts, they refer to the following facts:

    1.   The County does not require, nor is it customary for
       SAFE officers to ever, conduct any visual verification
       of the residences on their list prior to their arrival
       and deployment. Dep. of Mitchell at 31:7-13; Dep. of
       Moore at 23:24-24:3.

    2.   The County does not require the sergeant to inform the
       deputy sheriffs of any protocols or other information
       before arriving at the property. Dep. of Moore at
       28:1-5.

    3.   The County does not require, nor is it customary for
       SAFE officers to ever, verify the information it
       receives from other agencies when conducting a code
       enforcement. Dep. of Moore at 45:21-46:2.

Based on this evidence, a reasonable jury could find that the
County does have the unwritten policies argued by plaintiffs,
and that these policies are "a longstanding practice or custom
which constitutes the standard operating procedure of the local
governmental entity." Trevino v. Gates, 99 F.3d 911, 918 (9th
Cir. 1996) (internal quotation omitted). Plaintiffs "must also
show that the circumstance was (1) the cause in fact and (2) the
proximate cause of the constitutional deprivation." Id. Cause in
fact is easily demonstrated here where (1) if the SAFE team
verified the address to determine that plaintiffs' home was not
the home for which the code violation was issued, or (2)

25

1  conducted a visual inspection prior to deployment and discovered
2  that no transients were living in plaintiffs' backyard, the SAFE
3  team would never have been deployed to plaintiffs' home and,
4  therefore, plaintiffs never would have been injured. The issue,
5  then, is whether these policies and procedures are the proximate
6  cause of plaintiffs' constitutional injuries. As discussed
7  above, proximate cause is a question of foreseeability,
8  specifically whether the injuries sustained by plaintiffs are
9  the foreseeable consequences of the policies. Here, foreseeable
10 consequences of the policies identified by plaintiffs are that
11 the SAFE team will be deployed to the wrong house, not that a
12 deployed officer will disregard police protocol and the specific
13 instructions of his supervisor and approach the front door of a
14 house alone with his gun drawn. The only way that these policies
15 would constitute the proximate cause for plaintiffs' injuries is
16 for the court to assume that police officers always or often use
17 excessive force or disobey orders and protocols. Because the
18 policies identified by plaintiffs are not the proximate cause of
19 plaintiffs' injuries, the County's motion for summary judgment
20 on plaintiffs' § 1983 claim is granted.

21            **b.   Sheriff Steve Moore**

22      Sheriff Steve Moore ("Moore") is Breitmaier's supervisor,
23 and was not directly involved in the Breitmaier's approach of
24 plaintiffs' home and resulting firing of his weapon. Moore moves
25 for summary judgment on the § 1983 claim against him on the
26 grounds that there is no evidence that Moore ratified

1  Breitmaier's actions. Plaintiffs argue that Moore is liable

2  under § 1983 for providing inadequate training. Inadequate

3  training can support a § 1983 claim, but "only where the failure

4  to train amounts to deliberate indifference to the rights of

5  persons with whom the police come into contact." City of Canton

6  v. Harris, 489 U.S. 378, 388 (1989). Consequently, Moore can

7  only be liable under § 1983 when his failure to train "reflects

8  a 'deliberate' or 'conscious' choice." Id. at 389. Here,

9  plaintiffs argue that Moore provided inadequate training as to

10 the need to verify information in complaints provided by other

11 agencies. As described above, verification of information is not

12 a proximate cause of the constitutional injuries sustained by

13 plaintiffs. Thus, even if plaintiffs had provided evidence that

14 Moore deliberately failed to train his officers as to the

15 verification of information before deployment, such a failure

16 cannot support § 1983 liability under Monell. Thus, Moore's

17 motion for summary judgment on plaintiffs' § 1983 claim is

18 granted.

19              **2.  Negligent Supervision**

20     While plaintiffs' complaint alleged negligent hiring,

21 retention, training, supervision, and discipline, plaintiff only

22 opposes defendants' motion for summary judgment based on

23 negligent supervision. For this reason, the court assumes that

24 summary judgment on the other forms of negligence is unopposed

25 by plaintiffs, and summary judgment is granted as to those

26 forms.

1    In order to prove negligent supervision, a plaintiff must
2 prove "knowledge by the principal that the agent or servant was
3 a person who could not be trusted to act properly without being
4 supervised." <u>Juarez v. Boy Scouts of America, Inc.</u>, 81 Cal. App.
5 4th 377, 395 (Cal. Ct. App. 2000). Here, plaintiffs have
6 provided evidence that Breitmaier was only infrequently a member
7 of the SAFE team, and was not provided adequate instructions
8 prior to and when the team arrived at plaintiffs' house.
9 Furthermore, plaintiffs have provided expert testimony that the
10 failure to provide Breitmaier with guidance and information
11 constituted inadequate supervision of a police officer. The
12 County's and Moore's inadequate supervision of Breitmaier was
13 both the cause in fact and proximate cause of plaintiffs'
14 injuries. Thus, defendants' motion for summary judgment on
15 plaintiffs' negligent supervision claim is denied, but is
16 granted as to plaintiffs' claims for negligent hiring,
17 retention, training, and discipline.

18    **3.    Respondeat Superior for State Law Claims**

19    Defendant County does not move for summary judgment on
20 plaintiffs' state law claims. Plaintiffs nonetheless argue that
21 these County is liable for these claims under <u>Robinson v. Solano</u>
22 <u>County</u>, 278 F.3d 1007, 1016 (9th Cir. 2002). Because County does
23 not move for summary judgment on these claims, the court does
24 not consider plaintiffs' argument concerning County's liability.
25
26

**IV. CONCLUSION**

For the reasons stated above, the court GRANTS IN PART Defendants' motion for summary judgment, Doc. No. 25.

The court DENIES summary judgment for Eddie Bailey's claim for conversion against all defendants, and GRANTS summary judgment for all other claims brought by Eddie Bailey.

The court DENIES summary judgment for Kari and Hayley Bailey's claims against Terry Breitmaier for violation of § 1983 with respect the recovery under theories of Excessive Force and Due Process, and GRANTS summary judgment for violation of § 1983 under the theory of violation of the Eighth Amendment.

The court GRANTS summary judgment for Kari and Hayley Bailey's claims against the County of San Joaquin and Steve Moore for violation of § 1983.

The court GRANTS summary judgment for Kari and Hayley Bailey's claims against all defendants for violations of §§ 1985 and 1986.

The court DENIES summary judgment for all defendants for the following claims brought by Kari and Hayley Bailey:

        (1) Assault and Battery;

        (2) Negligence;

        (3) Intentional Infliction of Emotional Distress;

        (4) Conversion; and

        (5) Violation of Cal. Civ. Code § 52.1.

The court DENIES summary judgment for Kari and Hayley Bailey's claims of Negligent Supervision against the County of

1  San Joaquin and Steve Moore, and GRANTS summary judgment for

2  Kari and Hayley Bailey's claims of negligent hiring, retention,

3  training, and discipline against the County of San Joaquin and

4  Steve Moore.

5          The court DENIES summary judgment for Kari Bailey's

6  claim of Negligent Infliction of Emotional Distress against all

7  defendants, and GRANTS summary judgment for Hayley Bailey's

8  claim of negligent infliction of emotional distress against all

9  defendants.

10         IT IS SO ORDERED.

11         DATED:  November 16, 2009.

12

13

14         _____
           LAWRENCE K. KARLTON
15         SENIOR JUDGE
           UNITED STATES DISTRICT COURT
16

17

18

19

20

21

22

23

24

25

26